A93A0129. NOWAK v. HIGH.
(433 SE2d 602)

ANDREWS, Judge.

Appellant Nowak appeals the dismissal of her complaint in her lawsuit for medical malpractice against Dr. Thomas High.

Most of the facts relevant to this appeal are undisputed. On October 29, 1991, Nowak filed a complaint against Dr. High, alleging that he had directed that she receive an injection of phenergan in the right gluteus because of her complaints of nausea. According to the complaint, High, or his staff, negligently injected the drug into Nowak's lower hip area, as a result of which she sustained injuries. The complaint alleges that High's treatment was negligent in that the injection was made into the lower, instead of upper hip area.

Attached to the complaint was the affidavit of Marilyn Whited, a registered nurse, who had also received a master's degree in nursing. She stated in her affidavit that she had reviewed the medical records and was familiar with the standard of care exercised with regard to the nursing practice. She then stated: "[T]he giving of shots of phenergan is typically a function performed by registered nurses, although medical doctors are also competent to administer such injections by virtue of their training and experience. By virtue of my training and experience, I am familiar with the standard of care exercised in the United States for the giving of injections of phenergan, as well as the standard of care exercised in the medical community in the United States for performing such injections."

The affiant states that the giving of deep intramuscular injections is common, although it is necessary to avoid giving those injections in areas of high nerve density in order to avoid nerve damage. In Whited's opinion, the injection was given in a dangerous area and should have been given in a higher region of the hip. Whited opines that by giving the injection in the lower hip region, Dr. High's treatment of Nowak fell beneath the standard of care exercised in the medical community and constituted medical negligence.

High filed an answer to the complaint and then a motion to dismiss in which he argued that Whited's affidavit was insufficient under OCGA § 9-11-9.1. He contended that as a nurse, Whited was incompetent to testify against him and that her affidavit contained no proof that the two differing schools of expertise were the same in the area of giving phenergan injections.

In response to the motion, Nowak filed a second affidavit of Whited. In this affidavit, Whited clearly set forth the fact that the

practice of giving shots of phenergan is the same for nurses and doctors. High argued that, pursuant to *Cheeley v. Henderson*, 261 Ga. 498 (405 SE2d 865) (1991), the defect in Whited's original affidavit was not curable by amendment.

Citing *Milligan v. Manno*, 197 Ga. App. 171 (397 SE2d 713) (1990), and *Sandford v. Howard*, 161 Ga. App. 495 (4) (288 SE2d 739) (1982), the trial court granted the motion to dismiss pursuant to OCGA § 9-11-9.1 (a), because of its determination that there was insufficient proof in Whited's affidavit that the method of giving phenergan injections was the same for nurses and physicians. Thus, the trial court concluded, Whited's affidavit was not within the exception to the general rule that a member of a school of practice other than that to which the defendant belongs is not competent to testify against such a defendant. In her sole enumeration of error, Nowak contends that the affidavit was sufficient and that the trial court erred in granting the motion to dismiss.

Our first step in analyzing Nowak's contentions is to scrutinize carefully the complaint's allegations against High. The allegation of negligence was that High, either individually or acting through his servants and staff, negligently injected phenergan into Nowak's right gluteus. The complaint alleges that the *administration* of the injection was negligent; there is no contention that High's direction that the injection be given in the right gluteus was negligent.[1]

We are aware that there are some instances in which a nurse is competent to testify against a doctor. In *McCormick v. Avret*, 154 Ga. App. 178 (267 SE2d 759), aff'd *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980), "this court held and our Supreme Court agreed it was error for the trial court not to qualify a nurse as an expert witness concerning what constitutes reasonable care in keeping sterilized a needle used to draw blood from a patient because there was no evidence that the drawing of blood is a medical treatment exclusively within the professional skills of medical doctors." *Tye v. Wilson*, 208 Ga. App. 253, 254 (430 SE2d 129) (1993). In *McCormick*, the Supreme Court stated: "A nurse may or may not be qualified to state an inference as to a medical or surgical matter according to the extent of his or her training and experience and the subject of the inference." (Citation and punctuation omitted.) Id. at 401.[2] In *Tye*, supra, this court

---

[1] It is not clear from the record before us whether High or one of his staff administered the injection. To the extent that this allegation includes nurses, the trial court's dismissal might be erroneous. Nevertheless, appellant does not raise this argument and, accordingly, we will not address it.

[2] With regard to a nurse's expertise generally, see OCGA § 43-26-1 et seq., which specifically provides that nurses may administer medications and treatments as prescribed by a physician practicing medicine. In this regard see also *Miller v. Med. Assn. of Ga.*, 262 Ga. 605 (423 SE2d 664) (1992) (holding that revisions to OCGA § 43-34-1 are unconstitutional in

addressed the opposite situation, and concluded that because of their overlapping expertise, a doctor was competent to give an affidavit against a nurse in a malpractice suit against a nurse, involving the care and treatment of the post-operative, intubated patient.

The question presented here is whether there is sufficient proof of overlapping expertise to establish that nurse Whited was competent to give the affidavit against High, a medical doctor. " 'The general rule is that a member of a school of practice other than that to which the defendant belongs is not competent to testify as an expert in a malpractice case.' " *Milligan,* supra at 171, citing *Sandford,* supra. "[I]n *Sandford,* this court went on to carve out an exception to the general rule. 'Where there is proof by competent evidence that the methods of treatment are the same despite the difference in the nomenclature of the schools involved, the witness is competent to testify.' " *Milligan,* supra at 171.

Contrary to the trial court's holding, we conclude that Whited's affidavit was sufficient proof that the methods of treatment for the giving of phenergan injections by nurses and doctors are the same. In her affidavit, Whited clearly states that she is familiar with the standard of care regarding the giving of phenergan injections in both the nursing profession and in the medical profession generally, and that Dr. High's performance in this regard fell beneath the standard of care in the medical profession. Although she does not explicitly state that the method of giving the shots for doctors and nurses is the same, Whited sets forth the evidence which shows that she, through education, training, and experience has peculiar knowledge concerning this particular area of overlapping expertise. See *Hicks v. Mauldin,* 190 Ga. App. 660 (4) (379 SE2d 806) (1989) (osteopathic pediatrician was competent to testify as an expert in a medical malpractice trial against an allopathic general practitioner when there was testimony that there was no difference in the way the two would have treated the patient); compare *HCA Health Svcs. of Ga. v. Hampshire,* 206 Ga. App. 108, 111 (424 SE2d 293) (1992) (affidavit of allopathic physician was insufficient against osteopathic appellants because it contained no evidence regarding the methods of treatment so as "to establish 'a professional overlap of expertise in at least one matter alleged by (appellees) to constitute malpractice' "); *Chandler v. Koenig,* 203 Ga. App. 684 (417 SE2d 715) (1992) (affidavit of pharmacologist in medical malpractice suit against physician was insufficient since areas of overlapping expertise were not clearly set forth); *Milligan,* supra (osteopathic physician's affidavit insufficient in action against allopathic physician since it contained no evidence that the

---

part because of the implication from the statute that nurses cannot give shots).

methods of treatment of plaintiff's condition were the same); *Bethea v. Smith*, 176 Ga. App. 467 (2) (336 SE2d 295) (1985) (affidavit of podiatrist in medical malpractice action against orthopedic surgeon that he was familiar with the medical profession generally was insufficient where there was no showing of overlapping expertise); *Piedmont Hosp. v. Milton*, 189 Ga. App. 563 (377 SE2d 198) (1988) (affidavit of medical doctor insufficient in action against nursing personnel in part because it did not establish that doctor was an expert competent to testify regarding nursing).

Here, as in *Sandford*, the affidavit itself shows that the practice of giving phenergan injections is shared by the nursing and medical professions, and is an area in which the professions overlap. The instant situation differs from the cases reaching the opposite result listed above in that Whited's affidavit demonstrates her familiarity with the practice of giving injections. Her affidavit is not critical of High's *direction* that the injection be given, but is critical of the implementation of that directive. The administration of doctors' orders regarding medication is the province of registered nurses; in fact, OCGA § 43-26-3 (6) specifically includes within the definition of the practice of nursing "the administration of medication and treatments as prescribed by a physician practicing medicine in accordance with Article 2 of Chapter 34 of this title. . . ."

Clearly, the instant case is not one of simple negligence, and it involves a medical question. See *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200 (2, 3) (345 SE2d 904) (1986); *Chafin v. Wesley Homes, Inc.*, 186 Ga. App. 403 (1) (367 SE2d 236) (1988); *Sparks v. Southwest Community Hosp. &c. Center*, 195 Ga. App. 858 (395 SE2d 68) (1990); compare *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107 (354 SE2d 872) (1987). Nonetheless, the allegations of negligence do not involve Dr. High's professional medical judgment that an injection of phenergan was appropriate; rather the allegations concern the implementation of that directive. Given the statutory definition of the practice of nursing, which encompasses the giving of injections; the averments of Whited's affidavit; and Nowak's allegations of negligence, we conclude that the affidavit was sufficient and the trial court's dismissal of the complaint was improper. Because of our conclusion regarding the sufficiency of the affidavit, we need not address Nowak's additional arguments.

*Judgment reversed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 8, 1993 —
RECONSIDERATION DENIED JULY 16, 1993 —

*The Koski Firm, Robert C. Koski, Steven I. Goldman*, for appel-

lant.

*Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Brian R. Neary,* for appellee.